COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

NOV - 9 2017

AFTAB PUREVAL
COMMON PLEAS COURTS

**IN THE COURT OF COMMON PLEAS, HAMILTON COUNTY, OHIO**

| | |
|---|---|
| Alyssa Portnoy<br>1050 Greenup St. #203<br>Covington, KY  41011 | Case No.  A ˙ ⁻ 0 5 8 3 0<br><br>JUDGE |
| And | **COMPLAINT AND CLASS ACTION<br>PURSUANT TO RULE 23 OF THE OHIO<br>RULES WITH JURY DEMAND<br>ENDORSED HEREON** |
| Darlene Portnoy<br>7024 Cloister Rd.<br>Toledo, Ohio  43617 | Michael D. Portnoy (0040213)<br>810 West South Boundary Rd.<br>Perrysburg, Ohio  43551 |
| PLAINTIFFS, | PH: (419) 874-2775<br>FX: (419) 874-2777<br>e-mail:hawkport@aol.com |
| Vs. | Attorney for Plaintiffs |
| National Credit Systems, Inc.<br>3750 Naturally Fresh Blvd.<br>Atlanta, Ga.  30349, | |
| And | |
| Williamsburg of Cincinnati<br>200 West Galbraith Rd.<br>Cincinnati, Ohio  45215, | |
| DEFENDANTS | |

************************************************************************************************

NOW COME Plaintiffs, by and through counsel and for their causes of action against the Defendants, hereby states the following:

1.    At all relevant times, Alyssa Portnoy was a resident of Williamsburg of Cincinnati apartments, pursuant to a one (1) year written lease agreement, from

1

August 19, 2016 through August 19, 2017. (A copy of the written lease agreement is attached as Exhibit one (1).

2. At all relevant times, Darlene Portnoy was the co-signer of this lease Agreement.

3. At all relevant times Defendant Williamsburg of Cincinnati (hereinafter Williamsburg) owned and operated an apartment complex at 200 West Galbraith Rd. Cincinnati, Ohio 45215

4. At all relevant times Defendant National Credit Systems, Inc. (hereafter National) is a collection Agency and is acting as Williamsburg's agent to collect illegally charged debts against the Plaintiffs.

5. This action is brought by Plaintiffs as a class action on their own behalf and on behalf of others similarly situated under the provisions of Rule 23 of the Ohio Rules of Civil Procedure for damages, declaratory relief, attorney's fees and costs

6.. The class represented by the Plaintiffs in this action and of which they are members, consists of all those individuals who have been illegally charged fees for allegedly violating the notice requirements of the lease agreements with Williamsburg and have been pursued by the National, claiming that the alleged fees related to notice requirements of the lease agreements are allowed to be collected per the lease agreements.

7. The exact number of the members of the class as described above is not known but is estimated that there are no less than 250 members of the class and the class is so numerous that individual members pursuing their action is impractical.

8. There are common questions of law and fact in this action that relate and

2

effect the rights of each member of the class and the relief sought is common to the entire class namely whether the Defendants, either individually or jointly and severally, pursued the Portnoys and the class actions plaintiffs. alleging there is a notice fee to be paid by the Plaintiffs when this has been proven to be false.

9. The facts in this case will unequivocally establish the Defendants individually and/or jointly and severally, alleged they are entitled to this notice fee when this was never the case.

10.  The claims of the Plaintiffs who are representatives of this class are typical of the claims of the class and the claims of the members of the class including the Portnoys, depend on the showing of the act or acts of the Defendants given rise to the right of the Plaintiffs to the relief being sought.  There is no conflict as between the Portnoys and any other member of the class in respect to the sanction or with respect to the claims for relief set forth in this complaint.

11. This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class identified above would create a risk of inconsistent or varying adjudications respecting individual members of the class and establishing compatible standards of conduct for the Defendants and those grounds generally apply to the class verified above, making a final injunctive relief or course finding declaratory relief appropriate with respect to the class as a whole and the questions of law and fact, the members of the class identified above will dominate over any questions effecting only individual members and the Portnoys.

12. The Portnoys are representatives for the class and are able to and will fairly

and adequately protect the interest of the class   The attorney for the class is experienced in the areas of pursuing class actions and will actively be responsible for Plaintiffs' case.

## **COUNT ONE**

13  The Portnoys incorporates paragraphs one (1) through twelve (12) as if fully written herein

14. The Portnoys and other class members similarly situated as them entered Into written lease agreements with Williamsburg.

15. On July 27, 2017, Alyssa Portnoy provided to Williamsburg, a written intent to move out of her apartment. (See written intent attached as Exhibit two (2) This written intent gave the new mailing address for Alyssa to Williamsburg.

16. On August 24, 2017, Williamsburg mailed a letter to the Portnoys. alleging they owe $937.52 representing an insufficient notice fee of $1071.81 less the application of the $200.00 security deposit fee. (See August 24, 2017 letter and attached move out statement attached as Exhibit three (3)

17. On August 28, 2017, the undersigned mailed a letter to Williamsburg stating the written lease agreement does not allow Williamsburg to charge the late fees identified in the August 24, 2017 letter.

18. Williamsburg never responded to this letter. On October 26, 2017, National mailed collection letters to the Portnoys demanding that Alyssa and Darlene each pay $937.52 to National for illegally charged debts by the Defendants.

19  Pursuant to R.C. 2923.32(A)(1), the Ohio civil RICO statute, "No person employed by, or associated with enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a *pattern of corrupt activity* or the collection of an unlawful debt." (Emphasis added )  The term "enterprise" is statutorily defined as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of person associated in fact although not a legal entity."  R.C. 2923.31 (C).

20. A "pattern of corrupt activity" consists of "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). The term "corrupt activity" is statutorily defined as "racketeering activity" under the Organized crime Control Act of 1970, 84 Stat. 941, Section 1961(A)(B), (1)(D), and (1)(E), as amended, Title 18, U.S. Code. It also includes "conduct" that constitutes violation of specifically enumerated crimes. R.C. 2923.31(I) (2).

20  Ohio courts have held that in order to establish liability under R.C 2923.32, a plaintiff must show "(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses: (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3)  that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." ***Patton v. Wilson,*** 8th Dist. No. 82079, 2003-Ohio-3379, at ¶ 12, citing ***Kondrat v. Morris*** (1997), 118 Ohio App.3d 198, 209, 692 N.E.2d 246. The

elements must be pleaded with specificity. and sufficient evidence must be presented to overcome a motion for summary judgment. Id. at 209, 692 N E.2d 246.

21 Ohio Revised Code Section 2913.02 states the following.

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent,
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation;

22. 18 U.S.C. Sections 1961-1968, of the Federal Racketeering Influence and Corrupt Organization Act (RICO) is directed at "racketeering activity" defined in Section 1961 (1) to encompass, inter alia, acts "indictable" under specific federal criminal provisions, including mail fraud, provides in Section 1964 (c) for a private civil action to recover treble damages by any person injured in his/her business or property "by reason of a violation of section 1962." Section 1962(B)'s definition of "racketeering activity" includes (B) any act which is indictable under any of the following provisions for Title 18, United States Code, including section 1341 (18 U.S.C.S. Section 1341) relating to mail fraud.

23. Pursuant to **Sedema, S.P.R.L. v. Imrex Co. Inc., et al.,** 473 U.S. 479, (1985), 18. U.S.C.S. Sections 1961-1968 do not require that its occurrence must be

established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the consequences of a criminal connection. **Sedima** also held that 18 U.S.C.S. Sections 1961-1968 impose no distinct "racketeering injury" requirement or civil liability to attach.

24. By using the mail to send collection letters to the Plaintiffs that Defendants are entitled to be paid for this illegal debts, Defendants made material misrepresentations concerning the lease terms to each Plaintiff.

25 These Defendants, individually and jointly and severally, violated Ohio Revised Code Sections 2923.32(A)(1), 2923.31(C), (E), and (I)(2) and 18 U.S.C.S. Sections 1961-1968 by using the mail system to send notices and civil complaints to the Plaintiffs, alleging they are entitled to collect alleged "notice fees" pursuant to the terms of the lease agreements, when this has never been the case..

26. These Defendants engaged in this fraudulent enterprise through a pattern of racketeering activity by scheming to convince each Plaintiff the need to pay Defendants alleged "notice fees, knowing that the this was false. Defendants financially benefited from this pattern of fraud to each Plaintiff's financial detriment causing damages in an amount exceeding $25,000.00.

## COUNT TWO

27. The Portnoys, individually and as a class action representative, incorporates paragraph one (1) through twenty-six (26) as if fully rewritten herein.

28. The Portnoys and each Plaintiff are consumers as defined by Ohio Revised Code Section 1345.01.

29. Ohio Revised Code Section 1345 02 (A) states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."

30. Ohio Revised Code Section 1345.03 (A) provides that "[n}o supplier shall commit an unconscionable act or practice in connection with a consumer transaction."

31. State and Federal courts in Ohio have held that the Ohio Consumer Sales Practices Act applies to debt collectors, to litigation activities and to the debt collectors' attorneys. See **Hartman v. Asset Acceptance Corp.,** 467 F.Supp 2d 769, 780 (S.D. Ohio 2004), **Taylor v. First Resolution Invest. Corp.,** Slip Opinion No. 2016-Ohio-3444, June 16, 2016.

32. As a result of the Defendants' material misrepresentations to the Portnoys and the other similarly situated Plaintiffs concerning the legal assignment of these alleged promissory notes, these Defendants have violated Ohio Revised Code Sections 1345.02 and 1345.03 by acting arbitrarily, capriciously and fraudulently, causing damages to the Portnoys and the Plaintiffs in an amount exceeding $25,000.00.

**COUNT THREE**

33. The Portnoys, individually, and as class action representative, hereby incorporates paragraphs one (1) through thirty-two (32) as if fully rewritten herein.

34. The Fair Debt Collection Practices Act (15 U.S.C. Section 1692 et seq.) prohibits debt collectors from employing "any false, deceptive. or misleading representation or means in connection with the collection of any debt," including

8

misrepresenting "the character, amount, or legal status of any debt." (15 U.S C 1692e (2) (A)

35. A debt collector may not employ any "unfair or unconscionable means to collect or attempt to collect any debt," (15 U S.C. 1692 (f) and cannot collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," (15 U.S.C. 1692 (f)(1)

36. When analyzing whether conduct giving rise to the claim fits within the broad scope of the Fair Debt Collection Practices Act, "the conduct is viewed through the eyes of the 'least sophisticated consumer.'" **Currier v. First Resolution Invest. Corp.,** 762 F.3d. 529, 533 (6th Cir. 2014).That standard, while protecting "the gullible and the shrewd alike." also presumes "a basic level of reasonableness and understanding on the part of the debtor." Id.

37. To establish a prima facie case for a violation of the Fair Debt Collection Practices Act, a plaintiff must prove four (4) essential elements:

(a)    the plaintiff is a natural person who is harmed by violations of the Fair Debt Collection Practices Act, or is a "consumer" within the meaning of 15 U.S.C.S.A. Sections 1692 (a) (3), 1692 (d) for purpose of a cause of action, 15 U.S.C.A Section1692 (c) or 15 U.S.C.A. Section 1692 (e) (11):

(b)    the "debt" arises out of a transaction entered primarily for personal, family or household purposes, 15 U.S.C.A. Section 1692 (a) (5):

(c)    the defendant collecting the debt is a "debt collector" with the meaning of 15 U.S.C.A. Section 1692(a) (6); and

(d)    the defendant has violated, by act or omission, a provision of the Fair Debt Collection Practices Act, 15 U.S.C.A Sections 1692 (a)-1692 (o); 15 U.S.C.A. Section 1692(a); 15 U.S.C A. Section 1692(k). (See **Whittiker v. Deutsche Bank Natl. Trust Co**., 605 F.Supp.2d 914, 938-939 (N.D. Ohio 2009)

38. A plaintiff need not demonstrate he or she suffered actual damages in order to prevail on a Fair Debt Collection Practices Act claim; the Fair Debt Collection Practices Act "places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." **Stratton v. Portfolio Recovery Assocs.. L.L.C.,** 770 F.3d 443, 449 (6th Cir. 2014)

39. Courts have characterized the Fair Debt Collection Practices Act as a strict liability statute. **Fed. Home Loan Mtge. Corp v. Lamar,** 503 F.3d 504, 513 (6th Cir. 2007) To establish liability, a plaintiff does not have to prove knowledge or intent of the debt collector. **Wise v. Zwicker & Assocs., P.C.,** 780 F.3d 710, 712-713 (6th Cir. 2015)

40. The Fair Debt Collection Practices Act reaches the actions of "debt collectors," an inclusive statutory term that covers third-party debt collectors as well as attorneys who regularly engage in debt-collection activities, including litigation to collect debts owed and allegedly owed by consumers. 15 U.S.C.A. Section 1692 (a) (6); **Heintz v. Jenkins,** 514 U.S. 291, 293-294, 297-299 (1995)

41. The Portnoys and the purported plaintiffs are consumers and natural persons for purposes of their cause of actions. The alleged debts arise out of a transaction primarily for personal, family or collected purposes. The defendants collecting the alleged debts are "debt collectors" with the meaning of 15 U.S.C.A. Section 1692 (a) (6)

42. These defendants, individually and jointly and severally have violated the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act by fraudulently stating they are entitled to receive late "notice fees."

43. As a result of the defendants' illegal actions, plaintiffs have been damaged in amount exceeding $25,000.00

## COUNT FOUR

44. The Portnoys incorporate paragraphs one (1) through forty-three (43) as if fully rewritten herein.

45. Williamsburg violated Ohio Revised Code Section 5321.16 by refusing to return the security deposit to the Portnoys and to the other purported plaintiffs, thereby causing damages to them in an amount exceeding $25,000.00

**WHEREFORE,** the Portnoys, for themselves and for all the members of the class. requests that jury be empaneled to hear all triable issues in this case and respectfully requests this honorable Court for a Judgment against the Defendants as follows:

a.   The right of each class member to recover all monies due to them from the Defendants, either individually or jointly and severally, under the Ohio and Federal RICO statutes, the Ohio Consumer Sales Practice Act and for violating Fair Debt Collection Practices Act;.

b.   The Plaintiffs class be awarded damages instant to the equitable relief requested in the sum of an amount exceeding $25,000.00;

c.   This Court award the sum exceeding $25,000.00 on behalf of the class for punitive damages, statutory interest and any other equitable relief this

Court deems just based upon the illegal and willful acts by the Defendants,

d.    The Court award the sum exceeding $25,000 00 on behalf of the Portnoys and the other members of the class for punitive damages, statutory damages, statutory interest and any other equitable relief this Court deems just based upon the illegal and willful acts by the Defendants for violating Ohio Revised Code Section 5321.16 and

e.    For any other equitable relief this Court deems just.

Respectfully submitted,

s/ Michael D. Portnoy
Attorney for the Portnoys