## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## CINCINNATI

| | | |
|---|---|---|
| Alyssa Portnoy, et al., | : | Case No: 1:17-cv-834 |
| | : | |
| Plaintiffs, | : | Judge Michael R. Barrett |
| | : | |
| v. | : | |
| | : | |
| National Credit Systems, Inc., | : | Defendant's Motion To Dismiss for Lack of |
| | : | Jurisdiction under Fed. R. Civ. P. 12(b)(1) |
| Defendant. | : | |

**NOW COMES** Defendant National Credit Systems, Inc. ("NCS") and moves this Court to dismiss the remaining claim in this case for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). It is important to note that following the Sixth Circuit's November, 2020, ruling there is only one claim remaining in this case: the FDCPA claim against NCS.

**This motion raises one dispositive issue:**

To have standing, a plaintiff must allege a concrete and particularized injury. *Spokeo v. Robins*, 136 S.Ct. 1540 (2016). Here, Plaintiffs admittedly have no damages: they lost no money/property, nor did they suffer harm to their privacy or reputations. **Do Plaintiffs have standing? The Answer is "no".** Consequently, there is no jurisdiction to hear the FDCPA claim.

For this reason, NCS moves this Court to dismiss the remaining claim for lack of jurisdiction.

Respectfully Submitted,

/s/Katrina M. DeMarte
Katrina M. DeMarte (MI Bar No. P81476; CO Bar No. 43135)
DEMARTE LAW, PLLC
39555 Orchard Hill Place; PMB 6338
Novi, MI 48375
Tel. 313-509-7047

katrina@demartelaw.com
Counsel for Defendant

/s/Boyd W. Gentry
Boyd W. Gentry (0071057)
Law Office of Boyd W. Gentry, LLC
4031 Colonel Glenn Highway
First Floor
Beavercreek, Ohio 45431
Tel. 937.839.2881
Fax 800.839.5843
bgentry@boydgentrylaw.com
Counsel for Defendant

/s/Leslie C. Bender
Leslie C Bender (003227)
Clark Hill PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004
LBender@ClarkHill.com
Counsel for Defendant

## MEMORANDUM

## PROCEDURAL HISTORY

This case has a long history, but Plaintiff's lack of damages has never been the focal point.   Plaintiffs filed this case in November of 2017, and it was removed to this Court in December of 2017. *See* ECF Doc. # 1-2. Defendant National Credit Systems, Inc. ("NCS") filed its timely answer on December 20, 2017. *See* ECF Doc. # 7. Almost immediately, on January 31, 2018, Plaintiffs filed a motion for summary judgment, effectively abandoning the class allegations. *See* ECF Doc. # 13, 30, and 31. This Court denied Plaintiffs' motion for summary judgment and granted NCS's motion for summary judgment. *See* ECF Doc. # 61.

On appeal, the U.S. Court of Appeals for the Sixth Circuit affirmed the dismissal of all claims, except one: Plaintiffs' claim under the Fair Debt Collection Practices Act. *Alyssa Portnoy, et al v. National Credit Systems, Inc., et al,* C.A. 6 Case No. 20-3271. At no time did this Court or the Court of Appeals address Plaintiff's lack of damages or standing.

## FACTUAL BACKGROUND

On August 10, 2016, Plaintiffs entered into a one-year residential lease with former Defendant Williamsburg of Cincinnati for an apartment. *See* ECF Doc. # 66, Page ID # 543. The terms of the lease were set to automatically renew to create a month-to-month tenancy unless, per the lease's terms, either party gave 60 days' notice to terminate the lease or an intent to move out. *See id.*  Upon moving out, "Plaintiffs agree that they did not provide 60 days' notice of intent to move out, and, in fact, they provided just 23 days' notice." *See id* at Page ID # 544. On appeal, the Sixth Circuit interpreted the lease contract and found that:

> Plaintiffs gave their notice of termination on July 27, 2017, which was 23 days before August 20, 2017, when the lease renewed on a month-to-month basis, but more than 30 days before the next periodic rental date on September 20, 2017. Therefore, they effectively ended the tenancy on September 19, 2017, and are only responsible for rent through that date. Given that Williamsburg notified Plaintiffs that the rent for the month-to-month lease would be $898, Plaintiffs agreed to a $1.95 move out charge and a monthly rate of $63.76 for utilities, and Williamsburg retained the $200 security deposit, Plaintiffs owed Williamsburg $763.71 when the periodic rental term ended.

*See id.* at Page ID # 550 (C.A. 6, Case No. 20-3271).

After Alyssa Portnoy moved out of the apartment, Williamsburg sent her a letter stating that she owed $937.52 under the lease. *See Exhibit 3 to Complaint*, Page ID # 101. A few days later, attorney Michael Portnoy sent a letter to Williamsburg challenging the balance owed. *See Exhibit 4 to Complaint*, Page ID # 103. Williamsburg then referred the account to NCS for servicing. Complaint ¶ 18, Page ID # 62.

Plaintiffs now claim that NCS violated the FDCPA by seeking the same amount ($937.52) as sought by Williamsburg. *Id.* There is no allegation nor evidence showing that NCS added any amount to the balance calculated and sought by Williamsburg.

> Q. So Williamsburg had calculated $937.52 and NCS repeated that exact amount with the same move-out statement; right?
> A. Yes.

*Darlene Portnoy Depo.*, p. 82, lines 1-4.

## NO INJURY

Plaintiffs admit that they have no damages (no loss of money, no loss of damage or property, no mental or physical health treatment, and no harm in any way). *Darlene Portnoy Depo.*, pp. 83, 86-87; *Alyssa Portnoy Depo.*, p. 54, p. 70, line 23, p. 75, lines 12-21. NCS's alleged conduct of repeating the same balance as sought by Williamsburg did <u>not</u> cause injury.

> Q. And so this balance of $937.52 that was alleged in Exhibit G, did that
> cause you any other type of difficulty or harm?
> A. In what way?
> Q. In any way.
> A. No.

*Alyssa Portnoy Depo.*, p. 54, lines 16-21.  Similarly, Plaintiff Darlene Portnoy admitted

that NCS did nothing to injure her.

> Q Did National Credit Systems do anything to you?
> A Do anything to me?
>
> Q Right.
>
> A No. I mean, they tried to collect a debt.
> Q How did they try to collect it?
>
> A You know, I don't recall. I have not reviewed all the documents with
> regard to the first -- when the original complaint was filed.

*Darlene Portnoy Depo.*, p. 83, lines 14-21. Plaintiffs had no telephone communications

with NCS, and neither Plaintiff sent written correspondence to NCS. *Alyssa Portnoy*

*Depo.*, p. 80, line 24- p. 81, line 2 and p. 34, line 16 through p. 35, line 1; *Darlene Portnoy*

*Depo.*, p. 107, lines 8-10 and p. 92, lines 7-10.

Plaintiffs did not lose any money or property. *Darlene Portnoy Depo.*, p. 86, lines

16-22; *Alyssa Portnoy Depo.*, p. 54, lines 16-21. Neither Plaintiff paid anything toward

the balance.[1]  Nothing here caused injury to either of the Plaintiffs. *Alyssa Portnoy Depo.*,

p. 54, lines 12-21.

> Q. Are you claiming that in this case that you suffered some damages?
> A. I don't know. I don't know the answer to that question and I don't want
> to give you something that sounds good but isn't correct.

*Alyssa Portnoy Depo.*, p. 71, lines 6-10.

Plaintiffs do not claim any type of emotional or psychological harm.

---

[1] There is an outstanding judgment against Plaintiffs. Doc.70.

> Q. Are you going to ask a jury to give you some award of damages, assuming the case gets to a jury, that would compensate you for any like health treatment or mental health or physical health treatment?
>
> A. No.
>
> Q. Is there any mental or physical health issue in your life that you would relate to this case or the facts underlying this case?
>
> A. No.
>
> Q. Have you spoken about this case or the facts underlying this case to any doctor or counselor?
>
> A. No.

*Alyssa Portnoy Depo*., p. 75, lines 12-25.  The only time Darlene Portnoy was "upset" was when she learned that the Court of Appeals held that she owed $763.71.  *Darlene Portnoy Depo*., p. 73, line 10.

Even though the Court of Appeals concluded that Williamsburg was entitled to seek $763.71 (instead of $937.52 as originally sought by Williamsburg), the $173.61 difference was immaterial to Plaintiffs.  It would have made no difference to Plaintiffs if Williamsburg had only sought $763.71 as awarded in the judgment.  *Darlene Portnoy Depo., p. 86, line 23 – p. 87, line 4*; *Alyssa Portnoy Depo., p.*51, line 22-p.52, line 4.

Plaintiffs did not rely on any statement made by NCS.  For example, Plaintiffs did not pay the delinquent balance to Williamsburg and did not pay the delinquent balance to NCS.  Moreover, to date the Plaintiffs have not paid the Williamsburg judgment.  Plaintiffs did not and still do not prioritize this account over other obligations.  Finally, neither Plaintiff paid money to their counsel.  *Darlene Portnoy, Depo. p. 107, lines 14-17*.  Alyssa Portnoy put it this way:

> Q. Are you concerned that you might owe money for legal fees at the end of this?
> A. No.

Q. Why not?
A. Because I'm his only kid. Honestly.

*Alyssa Portnoy Depo.*, pp. 77-78.

## LAW & ANALYSIS

This motion makes a factual attack on jurisdiction.

> Attacks on subject matter jurisdiction may be either facial attacks
> or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.
> 1994). A facial attack challenges the legal sufficiency of the allegations of
> the complaint, and "goes to the question of whether the plaintiff has alleged
> a basis for subject matter jurisdiction, and the court takes the allegations
> of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright
> v. Garner*, No. 12-6314, 2014 WL 1978242, at *6 (6th Cir. 2014) (citation
> omitted). If those allegations establish federal claims, then jurisdiction
> exists. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320,
> 330 (6th Cir. 2007) (discussing Rule 12(b)(1) facial attacks). In contrast,
> a factual attack challenges the factual existence of subject matter
> jurisdiction, rather than the legal sufficiency of the allegations. *Ritchie*, 15
> F.3d at 598.

*Martinez v. Mayorkas*, No. 1:13cv485, at *3-4 (S.D. Ohio Sep. 30, 2014).

### A. Plaintiffs cannot carry their burden on any of the three elements of standing.

"Not all disputes have a home in federal court." *Buchholz v. Meyer Njus Tanick, PA*,

946 F.3d 855, 860 (6th Cir. 2020). The FDCPA claim must be dismissed under Rule

12(b)(1) because the Court lacks subject matter jurisdiction as Plaintiffs do not have

standing. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("lack of

standing" implicates "subject matter jurisdiction").

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly
> traceable to the challenged conduct of the defendant, and (3) that is likely
> to be redressed by a favorable judicial decision.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Each Plaintiff carries the burden of

establishing those three elements, and they cannot do so here. *Buchholz*, 946 F.3d at 861.

"Article III standing requires a concrete injury even in the context of a statutory

violation." *TransUnion LLC v. Ramirez*, --- U.S. ---, Case No. 20-297, 2021 WL 2599472, at \*8 (June 25, 2021).

"Injury-in-fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S.Ct. at 1547-48 (internal quotations and alterations omitted). The existence of a federal "cause of action does not affect the Article III standing analysis." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020). Rather, "Article III requires a concrete injury even in the context of a statutory violation." *Id.* at 1620-21, quoting *Spokeo*, 136 S.Ct. at 1549.

"A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (quotations omitted). It is not enough for the alleged violations to simply be *capable* of causing injury; rather, the conduct which the Plaintiff challenges must go beyond conjecture or speculation – it must <u>*actually*</u> injure a plaintiff as supported in the record. *Frank v. Autovest, LLC*, 961 F.3d 1185, 1189 (D.C. Cir. 2020). Not every violation of law causes an injury-in-fact sufficient to confer Article III standing. *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 997 (11th Cir. 2020). *Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 954 (11th Cir. 2020) (conjectural harms such as confusion over a collection letter, without more, is "insufficient to confer standing.").[2] The allegation of bare procedural violation cannot establish an injury in fact to satisfy plaintiff's standing under Article III. *Spokeo* at 1550. *See also Kale v ProCollect, Inc.*, --F.Supp.3d --, 2021 WL 2784556 (W.D. Tenn. July 2, 2021).

---

[2] The Complaint makes no reference to actual damages, except with reference to damages "exceeding $25,000.00", a generic phrase often used in Ohio's state courts. ECF 1.

The standing inquiry ensures that the courts stay within their role for resolving cases or controversies – ensuring that federal courts have created a threshold below which simple allegations of harm do not satisfy the "concreteness" element required to meet Article III standing. *Buchholz* clarifies the standard and determined that to sufficiently confer Article III standing, a federal court must look to two alternative sources, depending on the alleged breach of law. First, a court looks to "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Buchholz,* 949 F.3d at 862. If the alleged injury is not one redressed by the common law, a court may determine whether Congress, in enacting a federal statute, has "identified and elevated" the violation of the statute to a "concrete injury." *Id.* at 863. However, Congress does not have the authority under the Constitution "to enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams,* 882 F.3d 616, 622 (6th Cir. 2018). Rather, the "harm" Congress seeks to redress must exist "in the real world." *Id.*

Here, Plaintiffs have not alleged a scintilla of factual information suggesting they suffered actual damages or injury-in-fact. *Spokeo,* 136 S. Ct. at 1550. Even a strict liability statute does not make up for a plaintiff's failure to chronicle actual damages or injury in fact. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979); *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.,* 454 U.S. 464, 487 n. 24 (1982); 15 U.S.C. § 1691k. Additionally, allegations concerning the injury and standing are viewed under the "plausibility" standard set forth in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *Lardas v. Grcic,* 847 F.3d 561, 565 (7th Cir. 2017).

In the landmark opinion issued this year, the United States Supreme Court clarified the Article III Standing requirements by partially *reversing* certification on a class action where there was not a concrete injury. *TransUnion LLC v. Ramirez,* No. 20-297, 2021 WL 2599472, at *11 (U.S. S. Ct. June 25, 2021). Specifically, in *Ramirez*, the defendant (Trans Union) maintained a database of consumers for public access, which had been updated with incorrect and defamatory information – naming the class members as potential terrorists, drug traffickers, or serious criminals. Approximately 2/3 of the class did not have their information disseminated. The Court found that those persons could not be class members as they suffered no harm. *TransUnion LLC v. Ramirez,* No. 20-297, 2021 WL 2599472, at *11 (U.S. S. Ct. June 25, 2021).

The Seventh Circuit recently dismissed an FDCPA case for lack of jurisdiction where the plaintiff failed to show harm. *Nettles v. Midland Funding LLC*, 983 F.3d 896, 898 (7th Cir. 2020). In *Nettles*, a debt collector sent a letter stating a balance $104 higher than the debtor owed under a prior consent judgment. *Id.* The debtor sued alleging that "the collection letter was false, misleading, or otherwise unfair or unconscionable in violation of §§ 1692e and 1692f of the FDCPA." *Id., at* 898. The Seventh Circuit found that although the collection letter "overstated the amount of [the] debt . . . [the debtor] does not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her." *Id.*, at 900. The debtor admitted that the collection letter "didn't affect her at all and that her only injury is receipt of a noncompliant collection letter." *Id.*, at 900. *See also Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. March 11, 2021, *reh. req. denied* April 12, 2021)

Here, Plaintiffs' alleged injury is *solely* and *simply* the mere fact that their *attorney* (Michael Portnoy) *received* a response letter from NCS which indicated that

10

Williamsburg was seeking $937.52. (Letter filed at ECF Doc. #88-1).[3] ECF 66, 70. Plaintiffs already knew that so, NCS added nothing new to the equation. Plaintiffs' Complaint and deposition testimony do not establish "actual" injury. Plaintiffs have not paid any amount to Williamsburg or NCS.

Moreover, even assuming, *arguendo*, Plaintiffs had pled an injury-in-fact, they cannot trace an injury to NCS. This is particularly troubling since each Plaintiff seeks to be a "potential class representative," and "must demonstrate individual standing *vis-à-vis* [a particular] defendant; [s]he cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *see also Brown v. Nationwide Life Ins. Co.*, No. 2:17-CV-558, 2019 WL 4543538, at *3 (S.D. Ohio Sept. 19, 2019) (a "class representative" must have "a cause of action against each defendant") (citation omitted); 1 Newberg on Class Actions 2:5 (5th ed.).

### (1) Plaintiffs' formulaic pleadings

Plaintiffs' pleadings thus far have been inconsistent and lacking any factual detail regarding actions taken by either Darlene Portnoy or Alyssa Portnoy – which is to say that they merely recapitulate the actions of their counsel, Mr. Michael Portnoy. However, the dockets in these matters largely consist of a regurgitation of a stream of consciousness from Plaintiffs' counsel, and do not consist of any formalized discovery request,

---

[3] The Sixth Circuit Court of Appeals reduced the original judgment by $173.61. However, Plaintiffs have not alleged that NCS or Williamsburg had actual knowledge that the amount owed by the Plaintiffs was false, nor can Williamsburg's knowledge be imputed to NCS. To the contrary, the law is clear that a creditor's knowledge cannot be imputed to a debt collector. *See Randolph v IMBS, Inc.*, *supra*; *see also Schmitt v. FMA Alliance*, 398 F.3d 995 (8th Cir. 2005); *Messick v. Messerli & Kramer, P.A.*, 2016 WL 1180169 (D. Minn. Mar. 25, 2016); *Lynch v. Nelson Watson & Associates, LLC*, 2011 WL 2472588 (D. Kan. June 21, 2011); *Hennington v. American Exp. Co.*, 2010 WL 1329003 (S.D. Miss. Mar. 29, 2010); *Bianchi v. The Bureaus, Inc.*, 2008 WL 597587 (N.D. Ill. Feb. 27, 2008).

traditional pleadings, affidavits, documents, verified complaints, or other such documents that a traditional litigation attorney might expect to see during their course of dealings in a lawsuit. ECF Doc. 117 and 117-1.

If anything, the record consists of bald-faced assertions that NCS violated the law, with no allegations of facts, little by way of legal theory, and nothing by way of proffered evidence. ECF 2, 81. As set forth in *Iqbal, infra,* Complaints are reviewed under the "plausibility" standard when determining if sufficient allegations have been properly pled by a Plaintiff to put a Defendant on notice of the charges brought against it – essentially, that a Complaint must consist of more than a "formulaic recitation of the elements of a cause of action or naked assertion devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal citations omitted).

When taking the plausibility standards set forth in *Iqbal* regarding notice pleading into consideration under a damages analysis, and considering the facts in the light most favorable to Plaintiffs, this Honorable Court is <u>not</u> required to accept as true any unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. Where a pleading merely offers labels and conclusions – such as Plaintiffs' formulaic recitation in this matter – it is not only insufficient to state a plausible claim for relief under Article III, the defect is incurable, and Plaintiffs' case is ripe for dismissal.

Plaintiffs' FDCPA claim falls far from traditional FDCPA claims. Plaintiffs have not contended that NCS acted with a misleading or unfair method, nor did Plaintiffs rely on NCS to their detriment. In fact, Plaintiffs do not even have communications to, from, or with NCS. *Plaintiffs' responses to interrogatory #1 (Attached hereto as Exhibits A and B)*

12

### (2) Plaintiffs did not suffer an injury-in-fact.

Here, Plaintiffs lack standing because they did not suffer an injury-in-fact in the "flesh-and-blood or dollars-and-cents" sense of the terms. *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 463 (6th Cir. 2019). *Darlene Portnoy Depo.*, pp. 86-87; *Alyssa Portnoy Depo.*, p. 54, p. 70, line 23, p. 75, lines 12-21. Neither Plaintiff meets the burden of showing injury-in-fact. Each Plaintiff refused to testify as to whether they paid their counsel[4] anything. Plaintiffs admit that they have no injury (no loss of money, no loss of damage or property, no mental or physical health treatment, and no harm in any way). *Darlene Portnoy Depo.*, pp. 83, 86-87; *Alyssa Portnoy Depo.*, p. 54, p. 70, line 23, p. 75, lines 12-21.

Plaintiffs never paid money to Williamsburg <u>or</u> NCS, regardless of whether the amount owed was $937.52 as awarded to Williamsburg at the district court level, or the reduced amount of $763.71 as awarded by the court of appeals. As such, Plaintiffs cannot assert that there was some type of harm – whether tangible or intangible – that they suffered from their counsel's mere receipt of a letter from NCS.

Moreover, an allegedly mistaken "belief" is not an injury which could be redressed under the common law and therefore is not a "concrete injury" under the first test outlined in *Buchholz. See Trichell v. Midland Credit Mgmt, Inc.,* 964 F.3d 990 (11th Cir. 2020) (noting that although the underlying claim was one of "misrepresentation," a common law tort, the plaintiffs did not allege "justifiable reliance or actual damages," meaning no injury from misrepresentation and therefore no standing); *see also Cooper v. Atlantic Credit and Finance, Inc.*, 822 Fed. App'x. 951, 954 (11th Cir. 2020) (merely alleging

---

[4] Plaintiffs' counsel is Michael Portnoy. Mr. Portnoy is married to Plaintiff Darlene Portnoy and is the father of Plaintiff Alyssa Portnoy.

FDCPA violation insufficient to create intangible harm where allegations of confusion, with a particularized injury, do not satisfy standing); *Pennell v. Global Trust Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021) (rejecting "stress and confusion" as an injury).

Plaintiffs did not rely on NCS's representation that Williamsburg was seeking $937.52. In bypassing this critical element, Plaintiffs cut cords to relationship to harms that are traditionally remediable in English and American Courts. *See Bucholz, supra.* Plaintiffs do not have a concrete injury under the first *Buchholz* prong because there was no detrimental reliance (or other injury) that could have been redressed under common law. "[G]eneral emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes." *Bucholz*, at 861, 864-865, citing *Humane Society of United States v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 619-620 (2007).

Plaintiffs cannot meet the second potential source of a "concrete injury" identified in *Buchholz*. In *Lyshe v. Levy,* 854 F.3d 855 (6th Cir. 2017), the Sixth Circuit held that Congress did not create a "concrete harm" based on the mere receipt of misleading or false information. The plaintiff in *Lyshe* received discovery in a state court case from the defendant debt-collector that misrepresented the terms under which the discovery had to be answered. Like the Plaintiffs, the *Lyshe*-plaintiff alleged that this was a violation of the FDCPA's prohibition on using false or misleading information in connection with an effort to collect a debt.

The *Lyshe* plaintiff contended that "the FDCPA created a concrete harm – receiving false information in connection with debt collection activities – that he suffered when [the debt collector] made misstatements" in connection with its effort to collect a debt. *Lyshe,* 854 F.3d at 859. The *Lyshe* court held, "[t]his view of the law is

untenable" and that mere factual misrepresentations were "not the type of harm the FDCPA was designed to prevent," and, even if it were, the plaintiff did not allege that he acted on the misinformation. *Id.* Courts require FDCPA plaintiffs to show that they took some action or forewent some action because of the alleged violation. *See Frank v. Autovest, LLC*, 961 F.3d 1185, 1188 (D.C. Cir. 2020) (Explaining that "[n]othing in the FDCPA suggests that every violation of the provisions implicated here--no matter how immaterial the infraction--creates a cognizable injury."); *Adams v. Skagit Bonded Collectors*, LLC, 836 F. App'x 544, 547 (9th Cir. 2020) ("Adams has not alleged actual harm or a material risk of harm to the interests protected by the FDCPA. Nothing in the Complaint suggests he took or forewent any action because of the allegedly misleading statements in the letters.")

Similarly, the plaintiff in *Buchholz* argued that the receipt of misleading or false information in and of itself in an FDCPA case constituted a "concrete injury" sufficient to confer standing. The Sixth Circuit disagreed and found that, to sustain Article III standing, harm has to flow from the alleged violation. *Buchholz*, 946 F.3d at 870. In *Buchholz,* the Court did not see any "harm to come from that violation" and "[w]e are at a loss for how [the defendant's] letters caused any harm." *Id.*

### (3) No injury can be "traceable" to the conduct of NCS, and Plaintiffs are incapable of curing this defect.

Defendant anticipates that Plaintiffs will seek leave to amend their Complaint to allege some type of damage. But such an amendment would be futile as Plaintiffs have already testified that they suffered no injury. Nonetheless, for the sake of completeness, to the extent that Plaintiffs could allege some type of injury, there is no injury "traceable" to the conduct of NCS. Williamsburg, the creditor, calculated the balance and sought it

directly from Plaintiffs. Moreover, even if Williamsburg and NCS had only sought the amount allowed by the court of appeals ($763.71), as opposed to $937.52, it would have made no difference to Plaintiffs. *Darlene Portnoy Depo.*, pp. 86-87; *Alyssa Portnoy Depo., p.*51, line 22-p.52, line 4.

Here, each Plaintiff is a "potential class representative," and "must demonstrate individual standing *vis-à-vis* [a particular] defendant; [meaning, s]he cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *see also Brown v. Nationwide Life Ins. Co.*, No. 2:17-CV-558, 2019 WL 4543538, at *3 (S.D. Ohio Sept. 19, 2019) (a "class representative" must have "a cause of action against each defendant") (citation omitted); 1 Newberg on Class Actions 2:5 (5th ed.).

Moreover, [a]ny injury that [the Plaintiffs] conceivably suffered was . . . self-inflicted, which means that it was not 'fairly traceable to the challenged conduct of [NCS]", but rather to the Plaintiffs or their counsel – who knowingly entered into a contract which required a 60-day notice to terminate, rather than a 30-day notice to terminate. *See Butt v. FD Holdings, LLC*, 799 F. App'x 350, 353 (6th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)); *see also Buchholz*, 946 F.3d at 866.[5]

---

[5] In order to establish a prima facie case for an FDCPA violation, viewing all communications under the "least sophisticated consumer" standard, and in a manner protecting debt collectors from unreasonable interpretations, the Plaintiffs would need to prove the following: (1) that they are a natural persons who were harmed by violations of the FDCPA; (2) the "debt" arose out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5); (3) that NCS's collection of the debt is as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); *and* (4) that NCS violated, by act or omission, a provision of the FDCPA. *Whittiker v. Deutsche Bank Nat. Trust Co.,* 605 F. Supp. 2d 914, 938-39 (N.D. Ohio 2009), citing *Duncan v. Citibank,* 2006 WL 4063022, at *5 (D. N.M. 2006), *Grimard v. Palmer,* et al., 2007 WL 2287831, at *2 (E.D. Mich. 2007); *Clomon v. Jackson*, 988 F.2d 1314.

Plaintiffs do not allege that NCS made any statements that created any intangible harms that would otherwise be actionable as recognized by the Sixth Circuit. The Plaintiffs do not even attempt to allege that they paid the debt after receipt of the letter. Rather, Plaintiffs continue to punt the ball, even now, stating that they do not know where to mail the check to – such a delay tactic is clearly a belabored attempt at gamesmanship and should be recognized by this Honorable Court as nothing more than the same.  ECF 70, 75, 76, 81, 82, 83, 85, 86, 88, 89, 90, 91, 94, 95, 99, 100, 101, 104, 106, 107, 109, 110, 111, 112, 113.

Furthermore, to the extent that the Plaintiffs intend to argue that mere emotional distress over delinquent bills constitutes a concrete "injury-in-fact" - "confusion" and "anxiety" are not injuries. *Garland v. Orlans PC*, No. 18-11561, 2020 WL 2542036, at *7 (E.D. Mich. May 19, 2020), aff'd on other grounds, 999 F.3d 432 (6th Cir. 2021) (finding that a "state of confusion" is not an injury, and bare allegations of anxiety are not concrete injuries where future harm is not impending where harm is not traceable to defendant).

A feeling of anxiety or fear of being sued is not a concrete harm. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020).  Fear of future harm without imminency is not sufficient to establish concrete injury to confer Article III standing.  *Shepherd v. Debt Recovery Sols. of Ohio, Inc.,* No. 3:20-CV-520, 2021 WL 1578073, at *2 (N.D. Ohio Apr. 22, 2021). [6]  Thus, Plaintiffs cannot meet the second element of standing.

---

[6] The risk-of-harm analysis applies only in suits seeking injunctive relief. *TransUnion LLC v. Ramirez*, ⸺ S. Ct. ⸺, 2021 WL 2599472, at *12-*13(June 25, 2021).  It cannot be used to establish standing in a suit for damages.  *Id.*  Here, the FDCPA does not permit injunctive relief, so the "risk-of-harm" analysis does not apply.

**(4) There is no injury to be redressed by a favorable judicial decision.**

Plaintiff Darlene Portnoy said it best when she testified that the prayer for damages in her complaint was merely the result of her counsel's desire.

Q. [The Complaint] alleges that plaintiffs have been damaged in amount exceeding $25,000.
A. Yes.

Q. How did you calculate that?
A. With my counsel's guidance.

*Darlene Portnoy Depo.*, p. 86.

Again, if Williamsburg and NCS had only sought the amount awarded by this Court ($763.71), as opposed to $937.52, it would have made no difference. *Darlene Portnoy Depo.*, pp. 86-87. *Alyssa Portnoy Depo.,* p. 51, line 22-p.52, line 4. Ultimately, this lawsuit will have no effect on Plaintiffs. There can be no redressable decision which could bear any outcome on their life's circumstance – save for an attorneys' fee award – which, ultimately, appears to be the true motive behind this case. It is not the purpose of the FDCPA to determine whether Plaintiffs owed $937.52 as sought by Williamsburg's counterclaim or $763.71 as awarded by the court of appeals.

Thus, there is no injury that could be redressed by an award of damages. Like the first two, Plaintiffs fail this third element.

## <u>CONCLUSION</u>

Plaintiffs' deposition testimony demonstrates that Plaintiffs lack Article III standing. Plaintiffs have no injury-in-fact, no "cognizable harm", nothing traceable to NCS, and there is nothing to be redressed. This case should be dismissed.

Respectfully Submitted,

/s/Katrina M. DeMarte

18

Katrina M. DeMarte (MI Bar No. P81476; CO
Bar No. 43135)
DEMARTE LAW, PLLC
39555 Orchard Hill Place; PMB 6338
Novi, MI 48375
Tel. 313-509-7047
katrina@demartelaw.com
Counsel for Defendant

/s/Boyd W. Gentry
Boyd W. Gentry (0071057)
Law Office of Boyd W. Gentry, LLC
4031 Colonel Glenn Highway
First Floor
Beavercreek, Ohio 45431
Tel. 937.839.2881
Fax 800.839.5843
bgentry@boydgentrylaw.com
Counsel for Defendant

/s/Leslie C. Bender
Leslie C Bender (003227)
Clark Hill PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004
LBender@ClarkHill.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing via the Clerk of Court's
CM/ECF system on September 9, 2021, which will provide notice to all counsel of
record.

/s/Boyd W. Gentry
Boyd W. Gentry (0071057)