UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ALYSSA PORTNOY, et al., | : |
| Plaintiffs, | : Case No. 1:17-cv-834 |
| vs. | : Judge Michael R. Barrett |
| NATIONAL CREDIT SYSTEMS, INC., et al., | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before the Court on Plaintiff Alyssa Portnoy's and Plaintiff Darlene Portnoy's Motion for an Order to Depose Attorney DeMarte (Doc. 113), Motion for Sanctions and Class Action Certification (Doc. 127), and Motions for a Pretrial Conference (Docs. 134, 135). This matter is also before the Court on Defendant National Credit Systems, Inc.'s ("NCS") Motion for an Order to Show Cause (Doc. 118), Motion to Dismiss (Doc. 120), and Motion to Stay Discovery (Doc. 124).

This Court and the U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit") have provided the background for this matter in prior opinions, *Portnoy v. Nat'l Credit Sys., Inc.*, 837 F. App'x 364 (6th Cir. 2020); (Doc. 61), and this Court will not repeat the same herein unless necessary to address the parties' current arguments.

### I. MOTION TO DISMISS

The Court begins its analysis with NCS's Motion to Dismiss, as the Court cannot address the other pending motions regarding Plaintiffs' remaining claim under the Fair Debt Collection Practices Act ("FDCPA") if it lacks subject matter jurisdiction over that

claim. *Cf. Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit.").

NCS moves to dismiss Plaintiffs' complaint[1] under Federal Rule of Civil Procedure 12(b)(1). (Doc. 120). NCS argues that the Court lacks subject-matter jurisdiction over the FDCPA claim, because Plaintiffs lack standing, as Plaintiffs do not allege that they have suffered an injury in fact. (*Id.*) (first citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), as revised (May 24, 2016); then citing *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021); and then citing *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 359 (6th Cir. 2021)). Plaintiffs respond that statutory damages are sufficient to establish standing to pursue their FDCPA claim, and, alternatively, they have suffered an injury in fact because they are contractually required to pay their attorney's fees and costs. (Doc. 125) (first citing *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002 (9th Cir. 2008); and then citing *Smith v. Nat'l Credit Sys.*, Inc., 807 F. Supp. 2d 836, 839 (D. Ariz. 2011)).

Rule 12(b)(1) provides that a claim may be dismissed for "lack of subject-matter jurisdiction." Rule 12(b)(1) "[m]otions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction," as NCS's Motion to Dismiss does, "the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether

---

[1] There is no amended complaint in this matter. *See* (Docs. 113, 116). Plaintiffs filed a Motion for Leave to file an amended complaint. (Doc. 81). The Court denied that Motion for Leave. (Doc. 108). The operative complaint is the original complaint that Plaintiffs filed in in the Court of Common Pleas for Hamilton County, Ohio on November 9, 2017. (Doc. 2). After Plaintiffs' appeal to the Sixth Circuit, and that Court's remand back to this Court, Plaintiffs have one remaining claim, *i.e.*, their FDCPA claim against NCS, and NCS is the only remaining Defendant. *Compare* (*id.*), *with* (Doc. 70). Plaintiffs do not have a pending fraud claim or pending FDCPA claim against Attorney Gentry, Attorney DeMarte, Mr. Saltzman, Ms. Weisbaum, or Resource Real Estate Opportunities in the operative complaint in this matter.

subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015); *accord Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (In deciding a Rule 12(b)(1) motion to dismiss, "the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction."). The plaintiff bears the burden of proving jurisdiction when challenged by a Rule 12(b)(1) motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. CONST., art. III, § 2). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 578 U.S. at 338. Standing is necessary to the exercise of jurisdiction and is the "threshold question . . . [that] determin[es] the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. The plaintiff bears the burden of establishing standing. *Spokeo*, 578 U.S. at 338.

To establish Article III standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *accord Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018). If the plaintiff fails to establish standing, a court must dismiss the complaint for lack of subject-matter jurisdiction. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

With respect to the first element required to establish Article III standing, "[t]o establish injury in fact, a plaintiff must show that [ ]she suffered 'an invasion of a legally protected interest' that is 'concrete *and* particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (emphasis added) (quoting *Lujan*,

504 U.S., at 560); *accord TransUnion*, 141 S. Ct. at 2200.

For an injury to be "concrete," it "must be 'de facto'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (citing BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). Concrete injuries can be tangible and intangible, though tangible injuries*, e.g.*, physical harms and monetary harms, are often easier to recognize. *TransUnion*, 141 S. Ct. at 2204; *Spokeo*, 578 U.S. at 339. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 339. With respect to history's role, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *e.g.*, reputational harms, disclosure of private information, intrusion upon seclusion, abridgment of free speech, and infringement of free exercise. *Id.* at 341; *accord TransUnion*, 141 S. Ct. at 2204.

With respect to Congress' role, "its judgment is [ ] instructive and important" in determining whether an intangible harm constitutes injury in fact. *Spokeo*, 578 U.S. at 341*.* "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The U.S. Supreme Court ("Supreme Court") "has rejected the proposition that 'a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Spokeo*, 578 U.S. at 341. "For example, the law has long permitted recovery by certain

tort victims even if their harms may be difficult to prove or measure." *Id.* at 341-42 (citing RESTATEMENT (FIRST) OF TORTS §§ 569 (libel), 570 (slander per se)). "Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* at 342. "In sum, 'the violation of a procedural right granted by statute can' constitute an injury in fact when it poses a harm or risk of real harm identified by Congress and [is] traditionally accepted as the kind of injury required for Article III standing." *Thome v. Sayer L. Grp., P.C.*, No. 20-CV-3058, 2021 WL 4690829, at *3 (N.D. Iowa Oct. 7, 2021) (quoting *Spokeo*, 578 U.S. at 342).

The FDCPA protects consumers from abusive, deceptive, and unfair debt collection practices. In 2017, NCS—a debt collector hired by Plaintiffs' former-landlord, Defendant Williamsburg of Cincinnati ("Williamsburg")—mailed a collections letter to Plaintiffs stating that they owed a balance of $937.52. (Doc. 2 ¶ 18). Plaintiffs allege that NCS violated the FDCPA when it attempted to collect a debt that was not expressly authorized by the agreement creating the debt[2] and/or misrepresented the character, amount, or legal status of the debt. (*Id.* ¶¶ 33-43) (citing 15 U.S.C. §§ 1692e(2)(A), 1692f(1)). The Sixth Circuit held that the lease agreement between Plaintiffs and Williamsburg "allowed [Williamsburg and NCS] to recover what remained on the lease term or month-to-month renewal period." *Portnoy*, 837 F. App'x at 369. The Sixth Circuit held that Plaintiffs owed Williamsburg, and thus NCS could recover, $763.71, rather than the claimed $937.52. *Id.* at 369-70. The Sixth Circuit then held that, because the claimed $937.52 was not expressly authorized by the lease agreement, as that agreement only

---

[2] Here, the apartment lease agreement between Plaintiffs and Williamsburg.

5

expressly authorized a claim of $763.71, Plaintiffs' FDCPA claim against NCS survived, and remanded that sole claim for additional proceedings before this Court.[3] *Id.* at 373.

In light of the Supreme Court's *TransUnion*[4] opinion and the Sixth Circuit's *Ward*[5] opinion, NCS now argues that the Court should dismiss Plaintiffs' remaining claim because Plaintiffs lack Article III standing. (Docs. 120, 129); *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (internal citation omitted). The Court agrees, as Plaintiffs have not established that NCS's act, of claiming a debt that was $173.81 more than the lease agreement authorized, caused either Plaintiff "any actual harm beyond that 'bare procedural violation'" of the FDCPA. *See Hagy*, 882 F.3d at 622.

Plaintiffs' argument that they need not prove actual damages "and may proceed to recover statutory damages" fails. (Doc. 125 PageID 1467). The Sixth Circuit has expressly rejected the idea that one automatically has standing simply because Congress authorizes her to sue a debt collector for failing to comply with the FDCPA. *Ward*, 9 F.4th at 361 (citing *Spokeo*, 578 U.S. at 341). Rather, Plaintiffs "must show either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." *Id.* Plaintiffs do not make, or even attempt to make, either showing. Instead, Plaintiffs rely exclusively on pre-*TransUnion* case law and ignore the recent development of the law on standing in the

---

[3] The theory of recovery that the Sixth Circuit used to find in favor of Plaintiffs is not the theory of recovery that Plaintiffs argued before this Court or the Sixth Circuit.

[4] *TransUnion* deals with claims brought under the Fair Credit Reporting Act.

[5] *Ward* deals with claims brought under the FDCPA, albeit different sections of the FDCPA than the claim that Plaintiffs bring against NCS.

context of consumer-law claims. (Doc. 125).

Plaintiffs do not attempt to show that NCS's inclusion of the incorrect debt amount on the 2017 letter resembles a harm traditionally regarded as providing a basis for a lawsuit in American courts. *See Ward*, 9 F.4th at 361 (citing *TransUnion*, 141 S. Ct. at 2204). The Court is not in the business of developing parties' arguments, and will not do so here. To the extent that Plaintiff relies on pre-*TransUnion* cases, such reliance is misplaced as "*TransUnion* suggests that it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury." *Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021) (citing *TransUnion*, 141 S. Ct. at 2205).

Plaintiffs' argument that they suffered actual injuries because they are contractually required to pay their attorney fees and costs also fails. (Doc. 125 PageID 1467). The Sixth Circuit has held that plaintiffs "cannot show concrete harm simply by pointing to the cost of hiring counsel." *Ward*, 9 F.4th at 363. Applying that "logic to any plaintiff who hires counsel to affirmatively pursue a claim would nullify the limits created under Article III." *Id.*; *accord Duncan v. Liberty Mut. Ins. Co.*, 854 F. App'x 652, 670 (6th Cir. 2021) ("If the voluntarily incurred expenses of bringing a suit . . . could be used by themselves to show a [concrete injury,] this element of Article III standing would always be satisfied by any plaintiff who incurs legal expenses.") (internal citations and quotation marks omitted). Further, Plaintiffs testified that NCS's conduct related to and stemming from the 2017 letter from NCS did not cause either Plaintiff financial loss, property loss, or mental or physical harm. (Doc. 121-1 Darlene Portnoy's Depo.

7

PageID 1208-09); (Doc. 121-2 Alyssa Portnoy Depo. PageID 1331, 1352). Stated differently, Plaintiffs testified that they have no independent injury related to and stemming from receipt of NCS's letter. (Doc. 121-1 Darlene Portnoy's Depo. PageID 1208-09); (Doc. 121-2 Alyssa Portnoy Depo. PageID 1331, 1352).

As Plaintiffs fail to establish that the procedural violation that they assert bears a close relationship to a traditional harm recognized by American courts or that the procedural violation caused an independent injury, the Court finds that Plaintiffs cannot demonstrate a concrete harm and thus an injury in fact, and therefore cannot demonstrate standing based on the alleged FDCPA violation alone. *See Spokeo*, 578 U.S. at 341; *Ward*, 9 F.4th at 361. Plaintiffs do not have standing to bring their remaining FDCPA claim against NCS,[6] *see Ward*, 9 F.4th at 363, and fail to satisfy their burden to establish standing and jurisdiction, *see Spokeo*, 578 U.S. at 338; *Moir*, 895 F.2d at 269. The Court will grant NCS's Motion to Dismiss, without prejudice, for lack of jurisdiction. *See Lyshe*, 854 F.3d at 857; *see also Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) ("dismissal for lack of subject matter jurisdiction should normally be without prejudice.").

## II. MOTION FOR AN ORDER TO DEPOSE

Turning to the contractual dispute[7] between Plaintiffs and Williamsburg, on appeal,

---

[6] A named plaintiff and potential class representative must demonstrate individual Article III "standing vis-a-vis the defendant; [s]he cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *accord Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) ("Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims.").

[7] Plaintiffs brought claims under the federal Racketeer Influenced and Corrupt Organizations statute, the FDCPA, the Ohio Corrupt Practices Act, and the Ohio Consumer Sales Practices Act (Doc. 2), and Williamsburg filed a counterclaim seeking the money owed to it under the lease agreement (Doc. 9). No party challenges the Court's retained supplemental jurisdiction over this contract claim or enforcement of its prior judgment related to that claim. *Cf. Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1647

the Sixth Circuit held that Plaintiffs owed Williamsburg $763.71 under the apartment lease between those parties. *Portnoy*, 837 F. App'x at 370. This Court, consistent with the Sixth Circuit's opinion and directions on remand, entered judgment in favor of Williamsburg and held that Williamsburg is entitled to $763.71, plus 18% annum interest accruing from September 19, 2017, from Plaintiffs. (Doc. 70). At a January 7, 2021 telephone status conference, the Court asked Attorney DeMarte and Attorney Gentry[8] to provide Plaintiffs' counsel with the necessary information to be able to pay the Williamsburg judgment. Attorney DeMarte and Attorney Gentry apparently have not done so as of the date of the issuance of this Order. Plaintiffs request leave of Court to depose Attorney DeMarte to obtain clarifying information about what entity or person has the legal right to collect the payment of the judgment. (Doc. 113 PageID 1048).

"Discovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Plaintiffs fail to make any of the three requisite showings, and the Court will deny Plaintiffs' Motion for an Order to Depose. *See id.*

The Court, however, acknowledges that Plaintiffs have had difficulty obtaining information from Williamsburg about what entity or person has the legal right to collect

---

(2017) (A "plaintiff must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought.").

[8] DeMarte and Gentry represent NCS and also represent Williamsburg. (Docs. 36, 38, 52, 53, 56, 71).

the payment of the judgment in favor of Williamsburg and consequently that Plaintiffs have been unable to pay the judgment. The Court will order Attorney DeMarte and Attorney Gentry to file a notice, in writing, on this matter's docket, that contains the name of the proper payee and address for Plaintiffs to make a check out to and mail that check to such that Plaintiffs can pay the Williamsburg judgment.

### III. ATTORNEY CONDUCT

As a final matter, the Court will comment on the conduct of Attorney Gentry, Attorney DeMarte, and Attorney Portnoy in this matter.[9] Federal district courts are busy places, and district judges carry criminal and civil dockets that are often full and congested.[10] Since December 2020, when the Court received this matter on remand, the Court has held 11 discovery dispute conferences in large part due to these attorneys' inability to work together, a problem where fault lies on both sides. *See* Docket Entries for 02/22/2021; 03/29/2021; 04/15/2021; 04/30/2021; 07/01/2021; 07/09/2021; 07/15/2021; 07/29/2021; 08/17/2021; 09/14/2021; 10/12/2021. So as not to expend any additional unwarranted judicial resources, the Court gives examples of the unnecessary behavior that impeded the Court's ability to resolve the discovery disputes and move this matter forward. Attorney Gentry and Attorney DeMarte continually questioned Attorney Portnoy's competence and refused to acknowledge that the Court-ordered discovery at the various discovery conferences were legitimate discovery orders. Attorney Gentry and Attorney DeMarte often chose not to follow this Court's instruction,

---

[9] To be clear, the following does not apply to Attorney Bender, who entered her appearance in this case in July 2021 and, who consistently attempted to resolve the discovery disputes between Plaintiffs and NCS in a reasonable, transparent, and respectful manner when communicating with the Court.

[10] This is true especially since the beginning of the COVID-19 pandemic that remains an ongoing threat to the return to normalcy in our individual lives and the functioning of the federal court system.

thereby frustrating the discovery process, often to the annoyance of the Court and opposing counsel. Attorney Portnoy, for his part, continually accused Attorney DeMarte and Attorney Gentry of lying and destroying evidence. Due to the COVID-19 pandemic, the aforementioned discovery conferences were telephonic, and counsels' continual obfuscation of the issues did little to assist the Court in understanding the nature of the discovery disputes which, in effect, inhibited judicial review. Zealous representation does not require stonewalling or mudslinging.

IV. **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that

- NCS's Motion to Dismiss (Doc. 120) is **GRANTED**, and Plaintiffs' FDCPA claim against NCS is **DISMISSED**, without prejudice, for lack of jurisdiction.
- Plaintiffs' Motion for Sanctions and Class Action Certification (Doc. 127), Plaintiffs' Motions for a Pretrial Conference (Docs. 134, 135), NCS's Motion for an Order to Show Cause (Doc. 118), and NCS's Motion to Stay Discovery (Doc. 124), each related to Plaintiffs' FDCPA claim against NCS, are **each DENIED as moot**.
- Plaintiffs' Motion to Depose (Doc. 113) is **DENIED**.
- Attorney DeMarte and Attorney Gentry are to **forthwith FILE A WRITTEN NOTICE**, on their client's, Williamsburg's, behalf, on this matter's docket, as described above.

**IT IS SO ORDERED.**

_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court

11